**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**MARQUIS V. ROBINSON (S02222),**

**Plaintiff,**

**v.**

**WEXFORD HEALTH SOURCES, INC.; MARLENE KAYE HENZE; ALEXANDER ANOOSHAH; LATOSHA CHARLES; NICHOLAS ROSSI; AND CATHERINE LARRY,**

**Defendants.**

**Case No. 24 C 1087**

**Hon. Robert W. Gettleman**

## FIRST AMENDED COMPLAINT

Plaintiff Marquis V. Robinson ("Plaintiff"), by and through his attorneys, brings this Amended Complaint against Defendants Wexford Health Sources, Inc., Marlene Kaye Henze, Alexander Anooshah, Latosha Charles, Nicholas Rossi, and Catherine Larry (collectively, "Defendants") for depriving him of rights secured by the United States Constitution in violation of 42 U.S.C. § 1983. In support, Plaintiff states as follows:

## THE PARTIES

1. Plaintiff is an Illinois citizen.

2. During the relevant time period, Plaintiff was in the custody of the Illinois Department of Corrections ("IDOC") and housed at Joliet Treatment Center in Joliet, Illinois. Plaintiff has been housed at Joliet Treatment Center from December 16, 2022 through the present.

3. At all times relevant to this case, Defendant Alexander Anooshah ("NP Anooshah") was a nurse practitioner licensed in the State of Illinois who was employed by Wexford Health Sources, Inc. and provided care at Joliet Treatment Center. As a nurse practitioner at Joliet

Treatment Center, NP Anooshah was responsible for Plaintiff's medical care and personally provided care to Plaintiff. NP Anooshah is sued in his individual capacity.

4. At all times relevant to this case, Defendant Marlene Kaye Henze ("Dr. Henze") was a medical doctor licensed in the State of Illinois who was employed by Wexford Health Sources, Inc. and provided care at Joliet Treatment Center. As a medical doctor, Dr. Henze oversees medical care provided to all inmates at Joliet Treatment Center and personally provided medical care to Plaintiff. Dr. Henze is sued in her individual capacity.

5. At all times relevant to this case, Defendant Catherine Larry ("Dr. Larry") was Warden and Chief Administrative Officer of Joliet Treatment Center, employed by IDOC. As Chief Administrative Officer, Dr. Larry was responsible for implementing a strategic plan for the facility, including heath care services, along with reviewing and making determinations regarding grievances submitted by individuals in custody, including the grievance submitted by Plaintiff concerning his health care that is the subject of this case.

6. At all times relevant to this case, Defendant Latosha Charles ("Charles") was a Correctional Counselor at Joliet Treatment Center, employed by IDOC. As Correctional Counselor, Charles was responsible for reviewing grievances submitted by individuals in custody and making findings and recommendations regarding the grievances, including Plaintiff's grievance concerning his health care that is the subject of this case.

7. At all times relevant to this case, Defendant Nicholas Rossi ("Rossi") was a Correctional Counselor and Grievance Officer at Joliet Treatment Center, employed by IDOC. As Grievance officer, Rossi was responsible for reviewing a counselor's findings regarding grievances filed by individuals in custody and making recommendations regarding the grievances

to Dr. Larry, including Plaintiff's grievance concerning his health care that is the subject of this case.

8. Defendant Wexford Health Sources, Inc. ("Wexford") is a corporation incorporated in the State of Florida, with its principal place of business in Pittsburgh, Pennsylvania. Wexford is registered and authorized to do business as a foreign corporation in Illinois. At all relevant times, Wexford was in the business of providing health care and medical treatment to inmates at Joliet Treatment Center, including Plaintiff, pursuant to a contract between Wexford and IDOC. As an agent of IDOC exercising delegated governmental functions, Wexford is a state actor under 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

9. This case arises under the Eighth and Fourteenth Amendments to the United States Constitution and is expressly authorized by 42 U.S.C. § 1983 as a civil action addressing the deprivation of rights under state law. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343(a).

10. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b) because the events forming the basis of this Amended Complaint, including all acts committed by Dr. Henze, NP Anooshah, Dr. Larry, Charles, and Rossi occurred in this District, and, on information and belief, one or more of the Defendants are residents of this District.

## FACTUAL ALLEGATIONS

### Plaintiff's Injury and Efforts to Obtain Medical Treatment

11. In the late fall of 2023, Plaintiff was injured while playing basketball at the Joliet Treatment Center.

12. After the injury occurred, Plaintiff began experiencing moderate to severe pain in his ribs, making him unable to lie on his side, and causing him to have difficulty sitting up.

13. On December 26, 2023, after having no relief from the pain in his ribs, Plaintiff placed a sick call request with the nurses at Joliet Treatment Center to address his rib pain.

14. After a week went by and Plaintiff had not yet received an appointment from his first request, Plaintiff placed his second sick call request regarding his rib injury on January 2, 2024.

15. On January 3, 2024, Plaintiff was seen regarding his first sick call request, placed more than a week prior, by one of the nurses at Joliet Treatment Center. Despite Plaintiff rating his pain an 8-10 out of 10, the nurse only prescribed Plaintiff with a three-day supply of Acetaminophen. No follow up treatment or testing was ordered, and Plaintiff was not seen by a doctor or nurse practitioner.

16. During his visit with the nurse on January 3, 2024, Plaintiff asked to see a doctor or nurse practitioner, who are the only medical care professionals at Joliet Treatment Center who can order X-Rays and other scans. However, the nurse told Plaintiff that it is Wexford's policy at Joliet Treatment Center that inmates must place three sick call requests within a month before they are allowed to be seen by a doctor or nurse practitioner.

17. In order to satisfy the Wexford policy that the nurse explained to him, on January 9, 2024, Plaintiff placed his third sick call request regarding his rib injury in order to ensure that he would finally be seen by a nurse practitioner or medical doctor.

18. On January 10, 2024, a nurse saw Plaintiff in response to his second sick call request, placed more than a week prior. Plaintiff reported stabbing pain, rating a 10 out of 10 on the pain scale, and stated that he had trouble laying down and trying to sit up. Nevertheless, the nurse did not prescribe Plaintiff any additional medication or treatment, nor order any further tests. The nurse indicated in the progress notes that Plaintiff already had a prescription for

Acetaminophen and Ibuprofen, however Plaintiff had not received Ibuprofen since September, 2023, in response to a previous injury, and did not receive any refills of his three-day prescription for Acetaminophen which by that point had already been used; therefore, Plaintiff was left without medication. The nurse did not prescribe any additional treatment for Plaintiff's continued pain.

19. On January 18, 2024, Plaintiff saw Defendant NP Anooshah in response to his third sick call request, placed more than a week prior. NP Anooshah prescribed Mobic, an anti-inflammatory medication, and ordered a chest x-ray.

20. While NP Anooshah prescribed a four-month supply of Mobic for Plaintiff, Plaintiff only received a single two-to-four-week supply of the Mobic. He did not receive any refills.

21. In January 2024, Plaintiff was also given a four-month order for a different anti-inflammatory drug, Meloxicam, however, again, Plaintiff only received a single two-to-four-week supply of that prescription. He did not receive any refills.

22. On January 30, 2024, Plaintiff received a chest x-ray.

23. Plaintiff did not receive his x-ray results, and neither NP Anooshah, nor anyone else at the Joliet Treatment Center, provided any follow-up instructions or additional treatment options for Plaintiff's pain.

24. Sometime in February or March of 2024, Plaintiff placed a fourth sick call request due to his untreated rib injury. At this time, Plaintiff was not receiving any medication for his continued pain.

25. On March 20, 2024, a nurse examined Plaintiff. Plaintiff reported pain with movement, rating the pain a 10 out of 10 on the pain scale, and the nurse prescribed Plaintiff a muscle rub.

26. Plaintiff was prescribed a two-month supply of the muscle rub, however Plaintiff only received a single one-month supply. Plaintiff did not receive any refills.

27. Plaintiff has not received any medication for his injury after this one-month supply of muscle rub expired.

28. On April 9, 2024, Plaintiff placed his fifth sick call request regarding his rib injury. By this point, the injury had been lingering for months, Plaintiff had made repeated sick calls, and a medical doctor had not yet examined Plaintiff.

29. Sometime between April 9, 2024 and April 16, 2024, Defendant Dr. Henze examined Plaintiff. Dr. Henze ordered a thoracic spine x-ray.

30. On April 16, 2024, Plaintiff had a thoracic spine x-ray. The interpreting physician of the x-ray, Dr. Nicolaus J. Kuehn ("Dr. Kuehn"), reported an inability to exclude a fracture or pathology, and recommended "repeat diagnostic images or CT if unable to obtain."

31. Plaintiff did not receive his x-ray results and was not informed that repeat diagnostic images or a CT was recommended.

32. Neither the second set of diagnostic images nor the CT scan were ever performed.

33. Neither Dr. Henze, NP Anooshah, nor any other member of the Wexford or Joliet Treatment Center staff followed up with Plaintiff in any way concerning his injuries or the tests that had been recommended.

**Plaintiff's Grievance Concerning His Lack of Medical Treatment**

34. On February 15, 2024, Plaintiff filed a grievance regarding his continued intolerable pain and lack of adequate treatment.

35. On March 11, 2024, Defendant Charles reviewed Plaintiff's grievance and reported that Plaintiff's care started on September 1, 2023 with an order of anti-inflammatory medication,

despite Plaintiff's rib injury occurring at least a month later. Charles also found Plaintiff's care to be appropriate, despite his continued pain.

36. On March 18, 2024, Plaintiff submitted a response to his grievance, explaining that he had not received any care regarding his rib injury in September, 2023.

37. On March 19, 2024, Defendant Rossi reviewed Plaintiff's grievance, stating Plaintiff did not abide by grievance policy and submitted his grievance more than 60 days after the incident, despite Plaintiff's first sick call request and first nurse visit occurring less than 60 days prior to the filing of the grievance.

38. On March 20, 2024, Dr. Larry reviewed Plaintiff's grievance and signed off on its incorrect dismissal for failure to file within 60 days from the date of the incident, denying Plaintiff better medical treatment.

39. On April 16, 2024, the Administrative Review Board returned Plaintiff's grievance, stating the reason as "date provided is past 60 day timeframe."

40. Neither Dr. Larry, Charles, or Rossi took further action concerning Plaintiff's grievance or injury.

**<u>Plaintiff's Frustration Concerning Lack of Care</u>**

41. Given the continued inattention by Wexford and Joliet Treatment Center staff to his injury, Plaintiff grew despondent and frustrated. As a result, Plaintiff ceased requesting further medical care between April 2024 and February 2025, assuming that, based on past practice, no actual care would be forthcoming. Instead, Plaintiff filed the instant action on October 15, 2024.

42. Given the continued pain in his injured ribs, on February 6, 2025, Plaintiff placed another sick call request regarding his continued rib pain and the CT scan recommended by Dr. Kuehn.

43. Plaintiff did not receive a call pass until two weeks after his sick call request, on February 19 or 20, 2025. Despite receiving a call pass, Plaintiff was never actually called to the infirmary, and instead was told his appointment would have to be rescheduled.

44. On February 23, 2025, Plaintiff placed another sick call request. As of the filing of this Amended Complaint, Plaintiff has still not been allowed to meet with a nurse, nurse practitioner, or medical doctor regarding his multiple requests for care, and has not received the CT scan or medication he is owed.

45. Plaintiff has repeatedly been denied outpatient treatment, including his CT scan.

46. Plaintiff has repeatedly requested and made known to the Defendants of the ongoing pain in his rib, but has been denied treatment that successfully addresses his pain.

47. Due to the actions and/or inactions of Wexford, Dr. Henze, NP Anooshah, Dr. Larry, Charles and Rossi, Plaintiff has suffered, and still suffers, from moderate to severe rib pain to this day, which makes it difficult to lay down, sleep, get up, and prevents Plaintiff from exercising.

## COUNT I: 42 U.S.C. § 1983

### Deliberate Indifference to a Serious Medical Need–Eighth Amendment Claim (Against Defendants Dr. Henze, NP Anooshah, Dr. Larry, Charles, and Rossi)

48. Plaintiff repeats and realleges Paragraphs 1–47 as if set forth fully herein.

49. From December 16, 2022 to the present, Plaintiff has been an inmate in the care, custody, and control of IDOC.

50. On information and belief, from 2022 to the present, Wexford has been under contract with the State of Illinois to provide healthcare to IDOC inmates, including Plaintiff.

51. NP Anooshah and Dr. Henze are, or were at all relevant times, employed to serve as medical professionals at Joliet Treatment Center through Wexford Health Sources, which had

contracted with the State of Illinois; therefore, NP Anooshah and Dr. Henze were acting in their capacities as employees or agents of the State. Consequently, the actions taken by NP Anooshah and Dr. Henze regarding Plaintiff were performed under color of state law.

52. Dr. Larry is or was at all relevant times, employed by IDOC as Warden and Chief Administrative Officer of Joliet Treatment Center and was acting under color of state law.

53. Defendants Charles and Rossi are or were at all relevant times employed by IDOC as Correctional Counselors and were acting under color of state law.

54. Plaintiff's (still undiagnosed and untreated) rib injury and the pain resulting from the same are objectively serious medical conditions mandating medical treatment.

55. NP Anooshah, Dr. Henze, Dr. Larry, Charles, and Rossi were each aware of Plaintiff's serious medical condition through Plaintiff's repeated sick calls, appointments, and Plaintiff's grievance, and knew that this serious medical condition presented a serious risk of harm to Plaintiff if left untreated.

56. NP Anooshah displayed deliberate indifference and acted objectively unreasonably toward Plaintiff's serious medical needs by failing to provide Plaintiff with adequate and timely care, despite his knowledge of the severity and persistence of Plaintiff's rib pain, by not providing the ordered refills of Plaintiff's prescribed medication, and failing to provide additional care, as recommended by the interpreting physician of Plaintiff's spinal X-ray.

57. Dr. Henze displayed deliberate indifference and acted objectively unreasonably toward Plaintiff's serious medical needs by failing to provide Plaintiff with adequate and timely care, despite her knowledge of the severity and persistence of Plaintiff's rib pain, by not providing the ordered refills of Plaintiff's prescribed medication, and failing to provide additional care, as recommended by the interpreting physician of Plaintiff's spinal X-ray.

58. Dr. Larry, Charles, and Rossi displayed deliberate indifference and acted objectively unreasonably toward Plaintiff's serious medical needs by failing to adequately address Plaintiff's grievance, finding his lack of care appropriate, and wrongly dismissing the grievance for being filed more than 60 days after the date of the incident, resulting in continued delay and inadequate care in Plaintiff's treatment.

59. As a result of NP Anooshah, Dr. Henze, Dr. Larry, Charles, and Rossi's deprivation of access to timely medical care, which was necessary to address Plaintiff's injury, Plaintiff has suffered unnecessary, ongoing pain over the course of 15 months.

60. In addition, Plaintiff has still not received any actual diagnosis concerning his injury and has been deprived of various tests and scans recommended by Wexford personnel which might allow for the diagnosis and treatment of his injury.

61. As a direct and proximate result of NP Anooshah, Dr. Henze, Dr. Larry, Charles, and Rossi's objectively unreasonable and deliberately indifferent acts, Plaintiff suffered and continues to experience undue pain and suffering, in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution and 42 U.S. § 1983.

## COUNT II: 42 U.S.C. § 1983

### Deliberate Indifference to a Serious Medical Need–*Monell* Claim (Against Defendant Wexford Health Sources, Inc.)

62. Plaintiff repeats and realleges Paragraphs 1–61 as if set forth fully herein.

63. At all relevant times, Wexford contracted with the State of Illinois to provide healthcare to IDOC inmates at Joliet Treatment Center, including Plaintiff.

64. At all relevant times, Wexford employed Defendants Dr. Henze and NP Anooshah, who participated in Plaintiff's healthcare and acted under color of state law.

65. At all relevant times, Wexford was responsible for creating, implementing, overseeing, and supervising the policies and procedures followed by Wexford employees.

66. On information and belief, Wexford adopted and maintained policies that resulted in its employees failing to timely see Plaintiff and treat Plaintiff's medical condition, subjecting Plaintiff to prolonged pain and suffering due to moderate to severe pain in his rib.

67. Specifically, Wexford's cost-cutting policies and procedures employed during the time of its treatment of Plaintiff resulted in delays in Plaintiff's care and denials of adequate care.

68. Further, Wexford's cost-cutting policies resulted in an unwritten policy or practice that required residents, including Plaintiff, to place three sick calls within one month before being permitted to be seen by a medical doctor or nurse practitioner. This policy or practice resulted in a significant delay of Plaintiff's treatment because a medical doctor or nurse practitioner are the only medical staff allowed to order the necessary tests and treatments required to properly diagnose and treat Plaintiff's injury.

69. Additionally, Wexford's cost-cutting policies resulted in an unwritten policy that only allowed outpatient treatment to individuals who were suffering from emergency conditions, and precluded individuals with serious, but not immediately life-threatening conditions, from receiving necessary outpatient treatment, including Plaintiff's CT scan. This policy or practice resulted in a repeated failure to provide Plaintiff adequate treatment.

70. Wexford's policies and procedures constitute deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

71. As a direct and proximate result of Wexford's deliberately indifferent policies and procedures, Plaintiff endured, and continues to endure, undue pain and suffering.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this court enter judgment in his favor and against the Defendants and award the following relief:

(a) That upon hearing, the Court issues a preliminary and permanent injunction, requiring each Defendant to provide the necessary corrective rib injury treatment and appropriate follow-up care to Plaintiff;

(b) That upon hearing, the Court issues a preliminary and permanent injunction, preventing each Defendant from refusing to provide and/or delay the necessary medical treatment and care to Plaintiff;

(c) Compensatory damages to compensate Plaintiff for his pain and suffering in an amount to be determined at trial, jointly and severally against all Defendants;

(d) An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § § 1983 and 1988; and

(e) Any additional relief this court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

Dated: March 17, 2025

Respectfully submitted,

*/s/ Morgan R. Hirst*

Morgan R. Hirst
Ill. Bar No. 6275128
mhirst@jonesday.com
Maxine A. Kasznia
Ill. Bar No. 6349466
mkasznia@jonesday.com
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: +1.312.782.3939
Facsimile: +1.312.782.8585

*Attorneys for Plaintiff*
*Marquis V. Robinson*